99 F.3d 401
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Harvey K. MITCHEM, Petitioner-Appellant,
v.
DOW CHEMICAL COMPANY; Diamond Shamrock Chemicals Company;
Hercules, Inc.; Monsanto Company; T.H.
Agriculture & Nutrition Company, Inc.;
Uniroyal, Inc., Respondents-Appellees.
Francis G. LOTZ, Petitioner-Appellant,
v.
DOW CHEMICAL COMPANY; Diamond Shamrock Chemicals Company;
Hercules, Inc.; Monsanto Company; T.H.
Agriculture & Nutrition Company, Inc.;
Uniroyal, Inc., Respondents-Appellees.
Quinn R. BARTON, Petitioner-Appellant,
v.
DOW CHEMICAL COMPANY; Diamond Shamrock Chemicals Company;
Hercules, Inc.; Monsanto Company; T.H.
Agriculture & Nutrition Company, Inc.;
Uniroyal, Inc., Respondents-Appellees.
 Nos. 95-7149, 95-7150, 95-7211.
 United States Court of Appeals, Second Circuit.
 Dec. 13, 1995.
 
 1
 FOR APPELLANTS: Harvey K. Mitchem, pro se; Francis G. Lotz, pro se; Quinn R. Barton, pro se.
 
 
 2
 FOR APPELLEES: Michael M. Gordon, Cadwalader, Wickersham & Taft, New York, NY.
 
 
 3
 AS AMICUS CURIAE: Deborah E. Greenspan, Special Master for the Agent Orange Settlement Fund, Kenneth R. Feinberg & Associates, Washington, DC.
 
 
 4
 E.D.N.Y.
 
 
 5
 AFFIRMED.
 
 
 6
 Present: McLAUGHLIN, LEVAL, Circuit Judges, and KOELTL,* District Judge.
 
 
 7
 These causes came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and were submitted.
 
 
 8
 ON CONSIDERATION WHEREOF, it is hereby ordered, adjudged, and decreed that the judgments of the district court be and they hereby are AFFIRMED.
 
 
 9
 Appellees are chemical companies that manufactured herbicides used by the United States government in the Vietnam War. In 1979, a class action was brought in the United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge ) on behalf of thousands of Vietnam veterans, who claimed that contact with these herbicides caused injury and death. After lengthy proceedings, the action was settled. See In re "Agent Orange" Product Liability Litigation, 597 F.Supp. 740 (E.D.N.Y.1984) (approving settlement agreement), aff'd, 818 F.2d 145 (2d Cir.1987), cert. denied, 484 U.S. 1004 (1988); In re "Agent Orange" Product Liability Litigation, 611 F.Supp. 1396 (E.D.N.Y.1985), aff'd in part, rev'd in part, 818 F.2d 179 (2d Cir.1987), cert. denied, 487 U.S. 1234 (1988); In re "Agent Orange" Product Liability Litigation, 689 F.Supp. 1250 (E.D.N.Y.1988) (adopting guidelines for settlement distribution). The settlement agreement created a $180 million fund to be controlled by the district court through the appointment of a special master.
 
 
 10
 The district court established criteria for eligibility for awards from the fund. These criteria included that the claimant suffer from "total disability," as defined under the Social Security Act, 42 U.S.C. § 423(d)(1)(A), and that claimants apply for awards by January 1, 1989, or within 120 days of the onset of their disability (but still before December 31, 1994), whichever was later. The district court also created a three-tier process for evaluating claims. All claimants were required to file applications with the Claims Administrator, who applied the rules and determined the amount of award. Claimants could appeal adverse decisions to the Special Master for Appeals, whose review was subject to the approval of the district court. Finally, claimants could appeal further by written submission to the district court.
 
 
 11
 Harvey K. Mitchem filed an application for an award on July 22, 1993. The Claims Administrator determined that Mitchem was ineligible for an award. Mitchem appealed this determination to the Special Master. The Special Master denied his appeal, and the district court approved this denial, and denied a request for reconsideration. Subsequently, the Special Master accepted new evidence from Mitchem and reversed the prior decision. The Special Master determined that Mitchem became totally disabled in June, 1993, and awarded him $768.00. The district court approved this decision.
 
 
 12
 Francis G. Lotz filed an application for an award on February 20, 1989. The Claims Administrator determined that Lotz became totally disabled in September, 1986, and awarded him $3,712.00. Lotz, displeased with the amount of his award, appealed to the Special Master. The Special Master denied his appeal, and the district court approved the denial.
 
 
 13
 Quinn R. Barton filed an application for an award on June 9, 1993. The Claims Administrator determined that Barton became totally disabled in November, 1986, and awarded him $4,138.67. Barton, also displeased with the amount of his award, appealed to the Special Master. The Special Master denied his appeal, and the district court approved the denial.
 
 
 14
 Each of the three Appellants filed a petition for writ of mandamus in the district court. Mitchem's petition, which was filed before the revision of his award, requested that the court order the Special Master to accept his new evidence or, in the alternative, award compensation. Lotz's and Barton's petitions argued that their awards were inadequate given the extent of their disability. They requested that the district court order the Special Master to increase their awards.
 
 
 15
 The district court found that, as to Lotz and Barton, the Claims Administrator and the Special Master had properly applied the rules for administering the fund, and that they were not entitled to increases in their awards. The court construed Mitchem's petition as a request for any award, and noted that an award had, in the interim, been given. On January 10, 1995, the district court entered separate judgments dismissing the Appellants' petitions. Mitchem, Lotz, and Barton appeal the dismissal of their petitions, arguing that their awards are "greatly unfair, unjust, ... substandard ... insulting and a slap in [the] face." Specifically, they seem to argue that their awards are paltry in light of: (1) the wealth of the Appellees; (2) the maximum amount available to a claimant under the settlement agreement (approximately $12,800); and (3) the extent of their injuries.
 
 
 16
 All of Appellants' arguments challenge, at least implicitly, the settlement agreement itself and the rules under which awards are distributed. However, because proper members of a class are bound by the judgments and determinations in the class proceedings, Cooper v. Federal Reserve Bank of Richmond, 467 U.S. 867, 874 (1984), Appellants cannot now take issue with the terms of the settlement. Their second and third arguments, in part, challenge the amount of their individual awards. But the Appellants provide no indication that the rules of distribution, as set forth by the district court and affirmed by this Court, were misapplied. The district court expressly found that the rules were properly applied, and we find no grounds to question that decision.
 
 
 17
 We have considered all of the additional arguments raised by Appellants, and find them to be without merit.
 
 
 18
 Accordingly, the decision of the district court is AFFIRMED.
 
 
 
 *
 Of the United States District Court for the Southern District of New York, sitting by designation